HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | No. C09-1262RSM |
| Plaintiff, | ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | |
| GARY A. REYS, | |
| Defendant. | |

This matter comes before the Court on Defendant's Motion to Dismiss.  (Dkt. #8).

Plaintiff Securities and Exchange Commission ("Commission") filed a Complaint alleging

various violations of Section 10(b) of the Exchange Act and Rule 10b as well as violations of

Section 13(a) of the Exchange Act and Rules 12b-20, 13a-11, and 13a-13.  Pursuant to FED.

R. CIV. P. 8(a), 9(b), and 12(b)(6), Defendant Gary A. Reys moved to dismiss the Complaint

on the grounds that the Commission's claims lack specificity, and because the Commission

had failed to state a claim upon which relief could be granted.  Aside from his arguments

regarding the lack of specificity, Reys argues that the allegedly fraudulent statements are

immaterial or not actionable, and that the Commission's scienter assertions are not plausible.

ORDER GRANTING IN PART MOTION TO DISMISS– Page 1

For the reasons set forth below, the Court denies Reys' Motion to Dismiss in part,

grants in part, and dismisses the Complaint with leave to amend.

### A.  Rule 12(b)(6) Standard

To survive a dismissal for failure to state a claim pursuant to Rule 12(b)(6), a

complaint must contain more than a "formulaic recitation of the elements of a cause of action";

it must contain factual allegations sufficient to "raise a right to relief above the speculative

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   A complaint must plead

"enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll

allegations of material fact are taken as true and construed in the light most favorable to the

non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  Legal conclusions

couched as factual allegations are not given a presumption of truthfulness, and "conclusory

allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."

*Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

### B.  Rule 9(b) Standard

If a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b)

requires the plaintiff to "state with particularity the circumstances constituting fraud." F. R.

Civ. P. 9(b).  The party alleging fraud must include an account of the "time, place, and

ORDER GRANTING IN PART MOTION TO DISMISS– Page 2

specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).

### C.  Applicable Securities Law Provisions

The Commission's first claim for relief is that Reys violated Exchange Act Section 10(b) and Rule 10b-5 thereunder.  Section 10(b), codified at 15 U.S.C. § 78j(b), reads:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

One such regulation is Rule 10b-5.  *See* 17 C.F.R. § 240.10b-5. "To establish a violation of section 10(b) and Rule 10b-5, the SEC is required to 'show that there has been a misstatement or omission of material fact, made with scienter." *Gebhart v. SEC*, 595 F.3d 1034, 1040 (9th Cir. 2010) (citing *Ponce v. SEC*, 345 F.3d 722, 729 (9th Cir. 2003)).

The Commission's second claim for relief is that Reys aided and abetted CellCyte Genetics Corporation ("CellCyte") in violating Section 13(a) of the Exchange Act (15 U.S.C. §

ORDER GRANTING IN PART MOTION TO DISMISS– Page 3

78m(a)) and Rules 12b-20, 13a-11, and 13a-13 (17 C.F.R. §§ 240.12b-20, 240.13a-11, and 240.13a-13), which obligate issuers of securities registered pursuant to Section 12 of the Exchange Act (15 U.S.C. § 78*l*) to file with the Commission accurate quarterly and current reports.  In order to find that Reys aided and abetted CellCyte's s violation of federal securities laws in this manner, it must be found that: (1) CellCyte violated the relevant securities laws; (2) Reys had knowledge of the primary violation and of his or her own role in furthering it; and (3) Reys provided substantial assistance in the primary violation.  *Ponce*, 345 F.3d at 737.

## D.  Materiality

The Commission alleged that Reys, the Chairman and CEO of CellCyte, repeatedly misled the investing public about CellCyte's key product, a purported stem cell therapy to treat and repair damaged organs.  The Commission alleges that Reys did this through a number of misstatements and omissions that individually and collectively amounted to numerous counts of securities fraud.  As discussed below, Reys asserts various arguments why the faulty statements or omissions are immaterial as a matter of law.  Some of Reys' arguments are generally applicable to the materiality inquiry, while others are crafted to respond specifically to particular statements highlighted by the Commission.

To constitute a violation of the antifraud provisions, the statements or omissions in question must be material.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). "[A] misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940 (9th

Cir. 2005). "Determining materiality in securities fraud cases should ordinarily be left to the

trier of fact." *S.E.C. v. Phan*, 500 F.3d 895 (9th Cir. 2007) (citation and quotation marks

omitted). "Materiality typically cannot be determined as a matter of summary judgment

because it depends on determining a hypothetical investor's reaction to the alleged

misstatement." *Id.*   As the Supreme Court has explained:

> The issue of materiality may be characterized as a mixed question of
> law and fact, involving as it does the application of a legal standard to a
> particular set of facts.  In considering whether summary judgment on the issue
> is appropriate, we must bear in mind that the underlying objective facts, which
> will often be free from dispute, are merely the starting point for the ultimate
> determination of materiality.  The determination requires delicate assessments
> of the inferences a "reasonable shareholder" would draw from a given set of
> facts and the significance of those inferences to him, and these assessments
> are peculiarly ones for the trier of fact.  Only if the established omissions are
> "so obviously important to an investor, that reasonable minds cannot differ on
> the question of materiality" is the ultimate issue of materiality appropriately
> resolved "as a matter of law" by summary judgment.

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976).

## 1.  Post-Disclosure Stock Price Fluctuations

Reys cites a few out-of-circuit cases for the proposition that a misstatement or

omission is immaterial as a matter of law where a corrective disclosure has no material effect

on the company's stock price.[1]  This argument has been roundly rejected by the Ninth Circuit,

which reasoned that "[t]he market is subject to distortions that prevent the ideal of 'a free and

open public market' from occurring." *No. 84 Employer-Teamster Joint Council Pension Trust*

---

[1] Piggybacking on this argument is the contention that the alleged misstatements and omissions are immaterial as a matter of law because CellCyte's stock price did not suffer in the wake of newspaper articles criticizing CellCyte.  To the extent that the Court may examine any of the specific newspaper articles referenced in the Complaint, the Court does not find the newspaper articles–either on their own or in addition to the supposed corrective disclosures–so weighty or consequential that they show the alleged misstatements regarding the promotional campaign to be immaterial as a matter of law.

ORDER GRANTING IN PART MOTION TO DISMISS– Page 5

*Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 934 (9th Cir. 2003) (citing *Basic, Inc. v.*

*Levinson*, 485 U.S. at 246) (internal quotation marks omitted). "[A]doption of a bright-line

rule assuming that the stock price will instantly react would fail to address the realities of the

market." *Id.*  In his reply brief, Reys backpedals from his bright-line-rule argument in this

regard.  He argues instead that the stock price movements are just a factor to be considered in

assessing the materiality of certain public statements, and that the price fluctuations in this

case indicate that the immateriality of the statements was so obvious that reasonable minds

could not differ.  Reys underestimates the complex set of factors that influence stock price

fluctuations, as well as the extent to which materiality is an issue to be resolved by a trier of

fact.  On this motion, the Court rejects Reys' arguments that any of the allegedly fraudulent

statements or omissions were immaterial because of stock price fluctuations surrounding

purportedly corrective disclosures.

## 2.  "Truth on the Market" Doctrine

Reys next attacks individually the materiality of each of eight[2] alleged misstatements

and omissions.  Reys' first argument is that two of CellCyte's alleged misstatements are

immaterial as a matter of law because CellCyte included language in its SEC disclosures that

cured the misstatements of any confusion or misleading.

Regarding Statement 1, the Commission faults Reys for stating that CellCyte's

discoveries "are the first stem cell enabling drugs to enter Investigational New Drug ('IND')

supported by the United States Food and Drug Administration ('FDA') clinical trials", when, in

fact, Reys knew or should have known that the drugs had not entered IND (because CellCyte

---

[2] For simplicity's sake, the Court's numbering of the statements in this order tracks the
numbering in Reys' Motion to Dismiss.  Reys has numbered the statements and omissions
that he challenges Statements 1 through 8.

ORDER GRANTING IN PART MOTION TO DISMISS– Page 6

had never filed an IND application) or received any sort of approval from the FDA to begin clinical trials.  Reys points out that CellCyte also disclosed that the IND had not yet begun, stating that "an IND submission [was] *scheduled* for the second half of 2007" (emphasis added).[3]

Regarding Statement 2, the Commission faults Reys for the false statement that CellCyte's stem cell research had "been proven in extensive late-stage animal studies", when Reys knew that the preliminary experiments years earlier had achieved positive results in a small number of mice and that no additional research had been conducted using the special compound since 2002.  Reys, however, points out that CellCyte also clarified the issue by stating that CellCyte's "technology is at an early stage of development."

In making these arguments, Reys references the "truth on the market" doctrine.  It is probably correct that a truth-on-the-market defense is not available at the pleadings stage, *see Asher v. Baxter Intern. Inc.*, 377 F.3d 727, 735 (7th Cir. 2004), and in any case Reys has cited no published in-circuit case for the proposition that the truth on the market doctrine applies to an SEC enforcement action as opposed to a private securities action based a theory of "fraud on the market." *See In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991).  The "truth on the market" doctrine is a response to a very particular theory of liability in private securities actions (the "fraud on the market" theory).  *Id.*  The Court is not persuaded that it applies in an SEC action such as this.

---

[3] Reys has a similar argument regarding Statement 5.  He argues that "context," rather than a "corrective disclosure" cured the allegedly false statement, but in arguing that the truth of the matter was apparent to a reader of the SEC filings, both arguments amount to the same.  The Court thus rejects Reys' argument regarding Statement 5 on the same basis that it rejects the "truth on the market" arguments regarding Statements 1 and 2.

ORDER GRANTING IN PART MOTION TO DISMISS– Page 7

Put another way, Reys essentially asks the Court to act as a finder of fact to determine, at this early stage, immateriality as a matter of law based on the extent to which the latter statements cancel out the former corresponding misstatements. The Court declines this invitation. The 'truth on the market' doctrine is inapplicable on this motion, and even if it did apply, CellCyte's 'corrective disclosures,' or revisions to the allegedly false statements, were not clearly corrective or conveyed 'with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by' the alleged misstatements. *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1116 (9th Cir. 1989). The Commission's allegations regarding Statements 1, 2, and 5 (see footnote 3, *supra*) may go forward.

**3. "Bespeaks Caution" Doctrine**

Regarding Statement 3, the Commission faults Reys for CellCyte's statement that 'the company is advancing [the heart compound] into human trials for repair of the heart with an IND submission scheduled for the second half of 2007.' In reality, the Commission avers, Reys knew that CellCyte never attempted any research nor achieved any results to prove that its stem cell technology could repair the heart in mice, a prerequisite to beginning any clinical trial to repair the heart in humans. The Commission also states that Reys' target for an IND submission was not until at least June 2008, and that Reys knew that CellCyte did not attempt to formulate the crucial compound until May 2007. Reys counters that this statement is not actionable because elsewhere in its filings, CellCyte made general statements that it had limited liquidity and capital resources, that the technology was novel and inherently risky, and that extensive government regulation could impede its business.

ORDER GRANTING IN PART MOTION TO DISMISS– Page 8

The parties dispute whether the "bespeaks caution" doctrine applies to actions brought by the Commission.  The Court need not decide the issue, though, as the cautionary statements appear boilerplate, are at best marginally substantive, and are not tailored to the specific future projection in question.  *See In re Boeing Sec. Litig.*, 40 F. Supp.2d 1160, 1169 (W.D. Wash. 1998); *In re Trump*, 7 F.3d 357, 371-72 (3d Cir. 1993). "Under Ninth Circuit law, the Court must consider whether there was enough cautionary language or risk disclosure that reasonable minds could not disagree that the challenged statement was not misleading." *In re Boeing*, 40 F. Supp. 2d at 1170.  That test is not satisfied here.  In fact, reasonable minds could very well agree wholeheartedly that the cautionary statements were inadequate.  The Court thus holds that the Commission's claim regarding Statement 3 may go forward.

**4.  Statements 4, 6, and** 7

Regarding Statement 4, the Commission faults Reys for the statement that CellCyte was "working closely with Swedish Medical Center . . . ." Reys argues that this statement was mere puffery and "not capable of objective verification." Dkt. #8 at 10.  But the Commission's allegation does not focus solely on whether the work CellCyte was doing with Swedish Medical Center was proceeding "closely," an adverb subject to some interpretation.  Instead, the Commission alleges that there was no ongoing work between the two parties.  The Court cannot now find that "working closely," in the context of this case, is non-actionable puffery.

Reys next attacks the Commission's allegations that Reys is liable for CellCyte's omissions of critical information from its public filings and promotional materials (Statement 6, collectively).  The Commission alleges that:

- CellCyte failed to disclose that it was unable to obtain the specially formulated

ORDER GRANTING IN PART MOTION TO DISMISS– Page 9

compound from the European biotechnology company that had originally funded the

stem cell research;

- CellCyte failed to disclose that it had not determined how to properly formulate the

  special compound from material that CellCyte obtained from other sources;

- CellCyte failed to disclose that no safety or toxicology studies had been done while

  touting a lack of safety and toxicity concerns about the special compound;

- CellCyte failed to disclose that mice had died during preliminary research, thereby

  suggesting that some doses of the compound and stem cells were in fact toxic and

  even fatal; and

- CellCyte failed to disclose that its experiments in mice between October 2007 and

  March 2008 were unsuccessful.

   Reys argues that there was no duty to disclose these facts because a company does

not have a duty to denigrate its strategies, products, or prospects.  Reys cites *In re Craftmatic

Sec. Litig.*, 890 F.2d 628, 640-44 (3d Cir. 1989) for this proposition, but the facts of that case

are distinguishable.  The omitted facts there were mostly internal opinion statements and

projections, whereas here the omitted facts go to the core viability of the company's business.

Reys also argues that failure to disclose is not fraud when time remains for such problems to

be addressed.  But the alleged omitted facts do not put into doubt projections about meeting

benchmarks or certain particular goals as much as they pertain to the viability of the

company's core product at the time the statements were omitted.  Ultimately, both of Reys'

proposed theories as to why these omissions are immaterial lead the Court back to the

bedrock standard for analyzing materiality on this 12(b)(6) motion: "Only when the

disclosures or omissions are so clearly unimportant that reasonable minds could not differ

ORDER GRANTING IN PART MOTION TO DISMISS– Page 10

should the ultimate issue of materiality be decided as a matter of law." *In re Craftmatic*, 890 F.2d at 641 (citing *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. at 450). That standard has not been met regarding the alleged omissions.

Reys next argues that his alleged misstatements of his work history or qualifications (collectively, Statement 7) are immaterial as a matter of law. The Commission makes two allegations in this regard: (1) Reys falsely stated that he had been part of the executive team that took a pharmaceutical company through an initial public offering and subsequent acquisition by a large multinational company, when, in fact, he had only been a sales manager for the pharmaceutical company and had left the company years before its IPO and subsequent acquisition; and (2) Reys falsely represented that he had taken one of the privately-held biotechnology companies for which he previously served as CEO from conception to early human clinical trials in 18 months, when, in reality, the company had terminated Reys, and Reys had not led the company to human clinical trials.

Reys urges the Court to find that reasonable minds could not disagree as to the materiality of Reys' false statements, and cites the out-of-circuit case *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 657-58 (4th Cir. 2004). But that case "[did] *not* hold as a matter of law that a key manager's education could *never* be material." *Id.* at 658. Instead, the court limited its holding to the particular facts before it, and repeatedly emphasized that materiality is a fact-sensitive inquiry typically left to the judgment of the trier of fact when evaluating the "total mix" of information. *Id.* at 656-59. Moreover, *Greenhouse* regarded the materiality of the details of a businessman's educational history. The statements in this case instead assert great real-world success in highly relevant circumstances. This fact-sensitive inquiry cannot be resolved in Reys' favor on this motion.

ORDER GRANTING IN PART MOTION TO DISMISS– Page 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 5.  Paragraph 47 of the Complaint Is Not Specific Enough

Reys next challenges paragraph 47 of the Complaint, arguing that the allegations therein are not sufficiently particular to satisfy Rule 9(b).  *See* F. R. Civ. P. 9(b).  Paragraph 47 alleges that "[b]etween August and December 2007, the stock promoter distributed millions of spam emails, blast faxes, and newsletters that contained false and misleading statements about CellCyte, some of which were included in the text that Reys had approved." Complaint, at ¶ 47.

"Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotations and citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).

The Court agrees with Reys that paragraph 47 is too vague to satisfy the requirements of Rule 9(b).  The Commission has failed to specify what fraudulent statements were made, and in what way they were fraudulent.  Paragraph 47 states that the promotional materials "contained false and misleading statements about CellCyte, *some* of which were included in the text that Reys had approved" (emphasis added), but more specificity is required.  The Commission has submitted a copy of a Factual Information Review, as Ex. B to Dkt. #12, but that document was not identified in the Complaint (although it may be the document mentioned in paragraph 46).  Regarding paragraph 47, it is not apparent which of

the statements– in the Factual Information Review or elsewhere– the Commission finds fraudulent, and why.

Reys urges the Court to dismiss the Complaint, without leave to amend, to the extent it relies on paragraph 47.  However, the policy in favor of allowing amendment is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citation and quotation marks omitted).  "The standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir.1988) (internal quotation marks omitted) (alteration in original).  The Court thus dismisses the Complaint with leave to amend the argument presented in paragraph 47 as well as adjacent paragraphs to the extent the Commission requires in order to bring its Complaint within the strictures of Rule 9(b).  The Amended Complaint shall replace and supersede the original Complaint in its entirety.

### E.  Scienter

Reys argues that the Complaint should be dismissed because the Commission's scienter assertions fail the plausibility standard.  Scienter is an element of an enforcement action pursuant to Section 10(b) of the Securities and Exchange Act and Rule 10b-5.  *SEC v. Rubera*, 350 F.3d 1084, 1094 (9th Cir. 2003).  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Id.* (citation omitted).  Scienter may be established by a showing of recklessness.  *Id.*  Scienter is a fact question.  *Id.* at 1093-94.  The particularity with which the Commission's Complaint must allege scienter is determined by Rule 9, which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions

ORDER GRANTING IN PART MOTION TO DISMISS– Page 13

of a person's mind may be alleged generally." F. R. CIV. P. 9(b).  The Supreme Court has

endorsed the view that

> [A] rigid rule requiring the detailed pleading of a condition of mind would be
> undesirable because, absent overriding considerations pressing for a specificity
> requirement, as in the case of averments of fraud or mistake, the general "short and
> plain statement of the claim" mandate in Rule 8(a) ... should control the second
> sentence of Rule 9(b).

5A C. Wright & A. Miller, Federal Practice and Procedure § 1301 at 291 (3d ed. 2004)

(quoted in *Ashcroft v. Iqbal*, 129. S. Ct. 1937 (2009)).  Rule 9(b) simply "recognizes that any

attempt to require specificity in pleading a condition of the human mind would be

unworkable and undesirable." *Id.*

The Complaint is filled with statements focusing on Reys' allegedly central role in

making, or approving, the allegedly false or misleading statements.  For example, the

Complaint alleges numerous facts suggesting that Reys knew that certain false statements

were false when he had a hand in making them; that he tried to conceal his involvement in

the stock promotion campaign; and that he even lied to a newspaper reporter about his role in

the promotional campaign.  On this 12(b)(6) motion, the Court takes the allegations as true

and now finds that they allow the Court to draw "the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  The Complaint does not make,

as Reys appears to argue "naked assertions." *Id.*

Reys also argues that he could not plausibly have had an intent to defraud because he

never tried to sell any of his CellCyte stock.  But this argument asks the Court to consider

material beyond the pleadings.  In any case, sale of impacted stock is not a prerequisite to a

finding of liability under the relevant statutes.

ORDER GRANTING IN PART MOTION TO DISMISS– Page 14

Reys also argues that CellCyte's numerous disclosures/revisions are inconsistent with an intent to defraud. This is another factual argument that can be dealt with as the case progresses. At this stage, the revisions are not so overwhelming that all permissible inferences of scienter are sufficiently negated.

## F.   Conclusion

This Court GRANTS Defendant's motion to dismiss as far as it challenges paragraph 47 of the Complaint. Because the amended complaint will supersede and replace the original Complaint, the Court requests that the Commission's amended complaint re-state all other claims in the original Complaint, in addition to removing or altering the content of paragraph 47 and any adjacent paragraphs. The Commission's Complaint is thus DISMISSED without prejudice.

The clerk is directed to provide copies of this order to all counsel of record.

Dated this 28 day of April 2010.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART MOTION TO DISMISS– Page 15